UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JACKIE FOSTER MCCARTER, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) No. 3:23-cv-437-MJD |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) |
| *Defendant*. | ) |

## MEMORANDUM AND ORDER

Plaintiff Jackie Foster McCarter ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her disability insurance benefits ("DIB"). Each party has filed a brief seeking judgment in their favor pursuant to Rules 5, 6, and 7 of the Federal Rules of Civil Procedure Supplemental Rules for Social Security ("Supplemental Rules") [Doc. 15; Doc. 17]. Plaintiff filed a reply as allowed by Rule 8 of the Supplemental Rules [Doc. 20]. This matter is ripe for the Court's review.

For the reasons stated below: (1) Plaintiff's request for relief [Doc. 15; Doc. 20] will be **DENIED**, and (2) the Commissioner's request that his final decision denying benefits be affirmed [Doc. 17] will be **GRANTED**.

**I.    ADMINISTRATIVE PROCEEDINGS**

According to the administrative record [Doc. 7 ("Tr.")], Plaintiff filed her application for DIB on August 14, 2020, alleging disability beginning October 31, 2019. Plaintiff's claim was denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was conducted by telephone due to the COVID-19

pandemic on August 31, 2022. On October 14, 2022, the ALJ found Plaintiff had not been under a disability as defined in the Social Security Act at any time between her alleged onset of disability date and the date of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born December 8, 1962, making her 56 years old on the alleged onset of disability date, which is considered an individual of "advanced age." 20 C.F.R. § 404.1563. She has at least a high school education and can communicate in English. She has past relevant work as a medical assistant, which is considered in the DOT[1] to be a skilled job, typically performed at the light exertional level (Tr. 26). The ALJ found Plaintiff performed it at the heavy exertional level.

### B. Medical Records

In her Adult Disability Report, Plaintiff alleged disability due to (1) arthritis in her hands, neck, lower back, knees, and feet; (2) hypertension; (3) anxiety; (4) migraine headaches; (5) depression; (6) tinnitus in her left ear; and (7) fibromyalgia (Tr. 214). While there is no need to summarize all the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

At the telephonic hearing held August 31, 2022, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing, although not the same counsel representing her in this federal court case. The Court has carefully reviewed the transcript of the

---

[1] Dictionary of Occupational Titles

hearing (Tr. 33–57).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

3

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010).

### B. The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through December 31, 2024. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 31, 2019, Plaintiff's alleged onset of disability date. At step two, the ALJ found Plaintiff had the following severe impairments: (1) osteoarthritis and allied disorders, (2) spine disorder, (3) obesity, (4) depression, and (5) anxiety disorder (Tr. 20). The ALJ also found Plaintiff had a number of conditions which the ALJ found were not severe impairments, including (1) fibromyalgia, (2) hypertension, (3) thyroid disorder, (4) migraine headaches, (5) left shoulder pain/disorder, (6) lower extremity edema, (7) cognitive decline, and (8) tinnitus (Tr. 20–21).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c), with the following qualifications:

- She can lift/carry, including upward pull, up to 50 pounds occasionally and 25 pounds frequently.

- She can stand/walk/sit, with normal breaks, up to six hours each in an eight-hour workday.

4

Case 3:23-cv-00437-MJD   Document 21   Filed 03/21/25   Page 4 of 20   PageID #: 746

- She can perform unlimited pushing and pulling, within the exertional limitations.

- She has no postural, manipulative, visual, communicative, or environmental limitations.

- She can engage in only occasional social interactions.

- She can adapt to only occasional changes in her workplace.

(Tr. 22). At step four, the ALJ found Plaintiff was not capable of performing her past relevant work. At step five, however, the ALJ found there were unskilled occupations with jobs existing in substantial numbers in the national economy available to a person with Plaintiff's RFC, including filler spreader, cleaner, and deliverer (Tr. 26–27).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between her alleged onset of disability date and the date of the ALJ's decision.

## IV. ANALYSIS

Plaintiff argues the ALJ's decision should be vacated, and this matter remanded for either an award of benefits or, in the alternative, for a *de novo* hearing and new administrative decision. Plaintiff's presents two main issues for the Court's consideration:

1. The ALJ's mental residual functional capacity determination is unsupported by substantial evidence as the ALJ improperly evaluated the opinion of consultative examiner Pamela Brody, M.S.

2. The ALJ violated 20 C.F.R. § 404.1529 and SSR[2] 16-3p, by rejecting Plaintiff's statements about migraine headaches, without properly evaluating her statements in relation to the medical evidence.

[Doc. 15 at Page ID # 695].

---

[2] Social Security Ruling

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not,

however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### A. The ALJ's Consideration of Ms. Brody's Opinion

Plaintiff challenges the ALJ's assessment of the mental aspect of her RFC. In particular, she contends the ALJ improperly rejected Ms. Brody's opinion regarding Plaintiff's limitations in "understanding and memory." [Doc. 15 at Page ID # 704 (citing Tr. 386)]. Ms. Brody performed a one-time psychological consultative examination of Plaintiff on January 28, 2021 (Tr. 383–87). Ms. Brody's report, which is also signed by Michael Hawthorne, Ph.D., provides:

> MENTAL STATUS:
>
> The claimant's motor activity was average. Eye contact was good. Posture and gait were unremarkable. She was oriented x4. Speech was normal in rate and amount but soft. She correctly repeated four digits. She could recall one of three objects after five minutes and four of four Presidents since 1950. Her thought processes appeared organized. She could spell world backward and name a current event. She knew the colors of the American flag and the shape of a ball. She completed backward serial 3s to 91 but then had trouble. She was easily able to complete backward 5s. Affect was appropriate. Mood appeared depressed. Behavior was cooperative and verbal.
>
> . . . .
>
> ESTIMATION OF INTELLIGENCE:

Average --  high average.

. . . .

MEDICAL ASSESSMENT (MENTAL):

Ability to understand and remember directions: **The claimant's ability to understand directions does not appear to be significantly limited. Her ability to remember directions may be moderately limited. Her remote memory does not appear significantly limited.**

Concentration and attention: Mildly to moderately limited.

Social Interaction: Moderately limited.

Adaptation: Moderately limited.

(Tr. 385–87 (emphasis added)).

A claimant's RFC is the most they can do—not the least—despite their impairments. 20 C.F.R. § 404.1545(a)(1). RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence in the record, including the medical opinion evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013); *see also Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 425 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability." (citations omitted)).

Under 20 C.F.R. § 404.1520c, the ALJ is required to articulate how persuasive all medical opinions in the record are. In doing so, the ALJ is required to consider multiple factors, including (1) supportability, (2) consistency, (3) a source's relationship with the claimant, (4) specialization, and (5) other supporting or contradicting factors. "Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*,

392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (citation omitted). While the ALJ is required to consider the relevant factors, the ALJ is not required to explain their consideration in the written decision. 20 C.F.R. § 404.1520c(b)(2). This rule "notably reduces the articulation standards required for ALJs in assessing medical source opinions." *Gourley v. Comm'r of Soc. Sec.*, No. 2:21-CV-99, 2022 WL 4546376, at *5 (E.D. Tenn. Sept. 28, 2022) (cleaned up and citation omitted).[3]

Regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 1520c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 1520c(c)(2).

The ALJ discussed Ms. Brody's opinion as follows:

> Pamela Brody, M.S., consultatively examined the claimant in January of 2021. Ms. Brody noted that the claimant appeared mildly depressed and anxious. During the mental status exam, the claimant exhibited a normal thought process, she completed serial fives but not serial threes, and she spelled world backwards. The claimant reported that her concentration was "good." (Exhibit 4F at p. 4). She also reported that she got along with others. As for her activities of daily living, the claimant stated that she did some household chores, that she drove, and that she occasionally prepared meals. Ms. Brody's diagnostic impression was persistent depressive disorder and unspecified anxiety disorder. (Exhibit 4F). In her function report, the claimant stated that she got along with others but that she did not engage in many social activities. She reported that she managed her medications and finances without difficulty. She stated that she drove and that she could go out alone. She

---

[3] The prior articulation standard was known as the "treating physician rule." It required, *inter alia*, deference to the medical opinions of treating physicians. If the ALJ declined to assign controlling weight to the opinion of a treating physician, the ALJ was required to give "good reasons" for doing so. *See Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015); 20 C.F.R. § 404.1527.

> further stated that she followed written and verbal instructions and that she completed tasks that she started. (Exhibit 10E).
>
> . . . .
>
> Ms. Brody's opinion that the claimant did not have significant limits in understanding directions is consistent with the claimant's function report that stated that she followed written and verbal instructions well. This limitation is persuasive. Ms. Brody concluded that the claimant may have moderate limits in remembering instructions. However, this is not consistent with the exam in which the claimant exhibited no problems in recalling her personal and medical history and she exhibited normal thought process. Thus, this limitation is not persuasive. Ms. Brody concluded that the claimant had mild to moderate limits in concentration/persistence/pace. The undersigned finds that mild limits are more appropriate based on the claimant's function report in which she reported that she could concentrate and that she completed tasks that she started. Finally, Ms. Brody concluded that the claimant had moderate limits in social interaction and adaption. These limits are consistent with the claimant's reports that she got along with others but that she did not engage in social activities and that she did not handle stress or change well. Thus, these limits are persuasive. (Exhibit 4F).

(Tr. 23–25).

Plaintiff challenges the ALJ's rejection of Ms. Murphy's opinion that "[Plaintiff's] ability to remember directions may be moderately limited." [Doc. 15 at Page ID # 704–05; Tr. 386]. At step two, the ALJ found Plaintiff had only a "mild" limitation in understanding, remembering, or applying information (Tr. 22). And in assessing Plaintiff's mental RFC, the ALJ included limitations for unskilled work with only occasional social interaction and workplace changes, with no additional mental functioning limitations (Tr. 22).

Regarding supportability, Plaintiff argues the ALJ engaged in impermissible "cherry picking" of the evidence by citing only to Plaintiff's ability to recall her own personal information and Plaintiff's normal thought process. According to Plaintiff, the ALJ "ignore[d]" Ms. Brody's exam findings that would have supported a moderate limitation in remembering/understanding and justified greater mental restrictions in Plaintiff's RFC [Doc. 15 at Page ID # 704–05]. Plaintiff cites the portion of the exam demonstrating she could "only recall one of three objects after five

10

minutes, and four Presidents since 1950," and she "completed serial 3's to 91 but then had trouble." [*Id.* at Page ID # 705]. Relying on these aspects of the exam, Plaintiff argues the ALJ "clearly ignored pertinent findings [from] M.S. Brody's examination directly related to understanding and memory and did not explain why these findings do not support M.S. Brody's opinion." [*Id.* at Page ID # 706]. Plaintiff argues the Commissioner's defense of the ALJ's assessment of supportability amounts to nothing more than an "impermissible post hoc rationalization" [Doc. 20 at Page ID # # 740].

Even if the ALJ did not provide an exceptionally thorough explanation of the supportability of Ms. Brody's specific opinion that Plaintiff's ability to remember directions "may be moderately limited," the Commissioner correctly argues the applicable regulation does not require this level of detail:

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1); *see also Hague v. Comm'r of Soc. Sec.*, Case No. 20-13084, 2022 WL 965027, at *3 (E.D. Mich. March 30, 2022) (citing cases and noting that district courts within the Sixth Circuit "have interpreted these regulations as not requiring the ALJ to articulate the supportability and consistency to every impression within a medical source's opinion"). Clearly, the ALJ discussed Ms. Brody's opinion in detail and was aware of the exam findings Plaintiff cites. Indeed, the ALJ found the majority of Ms. Brody's opinion to be persuasive.

11

Regarding the exam findings Plaintiff cites, Plaintiff appears to imply the naming of four presidents demonstrated a deficit in her memory, but the exam report itself clearly indicates Plaintiff was only asked to identify four. (*See* Tr. 385 (Plaintiff "could recall . . . **four of four** Presidents since 1950." (emphasis added))). As for Plaintiff's ability to complete "backward serial 3s to 91" before having "trouble" (Tr. 385), Plaintiff cites to no authority indicating this demonstrates functional impairment in memory and understanding, as opposed to, for example, concentration and attention (in which Ms. Brody found Plaintiff experienced only "mild to moderate" limitations) (Tr. 387). Plaintiff quibbles with the ALJ's reliance on "normal thought process" as relating to memory/understanding, yet she fails to connect the dots in her own position. It is entirely reasonable for the ALJ to connect "normal thought process" with a less-than-moderate limitation in understanding.

This leaves Ms. Brody's finding that Plaintiff could only recall one of three objects after five minutes. While perhaps the ALJ's supportability analysis would have been more thorough had the ALJ addressed this particular exam result, the Court finds the ALJ's reasoning is still capable of meaningful review. As the Commissioner points out, the ALJ emphasized Plaintiff's demonstrated ability to recall an extensive personal and medical history; clearly, the ALJ found this fact more significant than Plaintiff's inability to recall more than one object out of three after five minutes. Plaintiff cites *Sparks v. Kijakazi*, No. 2:21-CV-102-DCP, 2022 WL 4546346, at *7 (E.D. Tenn. Sept. 28, 2022), in which this Court found, the "ALJ must explicitly point out which evidence they are relying on to support their finding as to the persuasiveness of the opinion, so that the reviewing court and claimant can follow their logic." As the foregoing demonstrates, the ALJ did just that. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (holding "we see little indication that the ALJ improperly cherry picked evidence; the same process can be

12

Case 3:23-cv-00437-MJD   Document 21   Filed 03/21/25   Page 12 of 20   PageID #: 754

described more neutrally as weighing the evidence"); *accord DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence).

Plaintiff also argues the ALJ "render[ed] little to no consistency analysis whatsoever surrounding this aspect of M.S. Brody's opinion, and had he done so, it is unequivocal that M.S. Brody's opinion surrounding understanding and memory is highly supported." [Doc. 15 at Page ID # 706]. Plaintiff points to evidence which she contends supports her position that Ms. Brody's opinion is consistent with the rest of the record. However, as the Commissioner notes, the evidence Plaintiff cites does not demonstrate harmful error. For example, despite reports from her husband and daughter regarding memory loss, Plaintiff herself "denied difficulty with short-term memory deficits, doing multi-step tasks, or following instructions, and she reported that she had no problems using technology or driving." [Doc. 17 at Page ID # 724 (citing Tr. 446)]. The ALJ discussed the neuropsychological examination report Plaintiff cites in her brief and in her reply, albeit at step two rather than in the discussion of Ms. Brody's opinion. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (endorsing examination of ALJ's entire decision when reviewing ALJ's assessment of opinion evidence); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016). The ALJ also specifically noted Plaintiff "met the criteria for mild neurocognitive disorder" in April 2021 (Tr. 21).

Moreover, the ALJ noted Plaintiff received only conservative treatment from her primary care provider for her mental health limitations (Tr. 24). The ALJ also addressed the consistency of Ms. Brody's opinion with the opinion of Plaintiff's treating nurse practitioner, Sandra Murphy:

> The undersigned also notes that Ms. Murphy had only been treating the claimant for a relatively short time of 5 months at the time of this opinion. . . .

13

> Ms. Murphy . . . completed a mental medical opinion. This opinion is consistent with Ms. Brody's opinion regarding moderate limitations in social interaction. Ms. Murphy did not find that the claimant had other significant mental limits. This opinion is somewhat persuasive. (Exhibit 16F).
>
> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity . . ., which is supported by the DDS physicians' opinions, Dr. Uzzle's physical exam, Ms. Brody's opinion, and the treatment notes.

(Tr. 25).

> In connection with her consistency-analysis argument, Plaintiff again cites to *Sparks*:
>
> This case involves a more egregious error than *Sparks* because in that case the ALJ compared the relevant doctor's opinion to that of the State agency doctors but did not specify what additional evidence made the opinion less persuasive. Here, there was no comparison of M.S. Brody's opinion at all with any other medical evidence whatsoever.

[Doc. 20 at Page ID # 739–40]. However, as the foregoing discussion demonstrates, when the ALJ's decision is read as a whole, the ALJ does indeed adequately address the consistency of Ms. Brody's opinion with the medical and other evidence in the record. In *Sparks*, the ALJ "did not even assign a specific level of persuasiveness to Dr. Chaudhuri's opinion," making it impossible for the Court to "ascertain whether the ALJ properly considered the supportability and consistency factors[.]" 2022 WL 4546346, at *8. Similarly, in *Miller v. Commissioner of Social Security*, No. 1:22-cv-00045, 2024 WL 1258194, at *8 (M.D. Tenn. March 25, 2024), which Plaintiff also cites, the Court reversed the ALJ and remanded the case for further proceedings because the ALJ offered only "generalized conclusions" about the medical opinion evidence without citing any specific evidence in the record in support.

Plaintiff may disagree with the ALJ's findings regarding the persuasiveness of Ms. Brody's opinion, but she does note cite to proof in the record or to binding authority that would require the Court to remand Plaintiff's claim for further administrative proceedings on this basis. The ALJ's decision demonstrates the ALJ adequately considered the factors of supportability and consistency

14

in evaluating Ms. Brody's opinion. The ALJ also observed Ms. Brody performed a one-time consultative exam, limited to Plaintiff's mental functioning status, consistent with the regulations. Accordingly, Plaintiff's motion will be denied to the extent she seeks remand based on the ALJ's consideration and discussion of Ms. Brody's opinion.

### B. The ALJ's Consideration of Plaintiff's Migraines

In assessing Plaintiff's RFC, the ALJ described Plaintiff's testimony regarding her migraine headaches as follows:

> At the hearing, the claimant testified that she is unable to work due to migraine headaches and falls. She stated that her headaches were severe enough that she had to lie down in a dark room. She estimated that these types of headaches occur one to two days per week.

(Tr. 24).

At step two, the ALJ found:

> The claimant has been treated for migraine headaches. In April of 2020, she reported that her headaches improved but that she sometimes needed something stronger. Her medications were adjusted. (Exhibit 1F at pp. 4, 6). In October of 2021, the claimant's medications were changed. In follow up notes, she reported no migraines since the medication change. (Exhibit 10F at pp. 9, 12). In June of 2022, the claimant reported feeling better since she changed from Topamax to propranolol for her headaches. (Exhibit 15F at p. 6). Based on the foregoing, the undersigned finds that migraine headaches are not a severe impairment.

(Tr. 20).

Plaintiff contends "[t]his entire analysis is faulty as it severely mischaracterizes Plaintiff's subjective symptom[] reports and the record at large," in violation of 20 C.F.R. § 404.1529 and SSR 16-3p. [*See* Doc. 15 at Page ID # 708–10]. Plaintiff goes on to argue:

> Here, the ALJ somehow found Plaintiff's migraines "not a severe impairment" on a false assertion that once Plaintiff started propranolol she started feeling "better." T 20. But the record paints a much different picture surrounding Plaintiff's migraines, and the ALJ's mischaracterization of the record led to a misevaluation of the impact migraines would have on Plaintiff.

15

[*Id.* at Page ID # 710].

Plaintiff then goes on to cite various treatment records related to her migraine headaches. She concedes a record from October 2021, which the ALJ cited, indicates she had not had any migraine headaches since she switched her medication to Propranolol from Topiramate, and that she had experienced some improvement in her cognition since stopping Topiramate. Plaintiff further concedes that treatment notes from June 2022, which the ALJ also cited, evidence improvement in Plaintiff's condition from the prior year (Tr. 607–09). In particular, a note from June 16, 2022, indicates Plaintiff scored "noticeably better" on aspects of cognitive testing that she had in March/May 2021, and that she had been feeling better since she started the Propranolol (Tr. 608–09).

Plaintiff argues that other records dated between October 2021 and June 2022 demonstrate migraine-headache related limitations. For example, she cites a November 2021 treatment note which provides that Plaintiff presented "complaining of unilateral headache located in the left occipital region, with photophobia and phonophobia." (Tr. 573). Plaintiff contends she "had been using her prescription medication without relief" [Doc. 15 at Page ID # 711 (citing Tr. 573)], but the treatment record indicates she had been taking "Fioricet and hydrocodone without relief." (Tr. 573). The record also indicates Plaintiff was diagnosed with "acute bacterial sinusitis" that same day (Tr. 574). Furthermore, despite the acute sinusitis and alleged migraine headache, Plaintiff's provider nevertheless observed Plaintiff was "active and alert," with a "normal mood and affect," and that she was exercising "good judgment." (*See* Tr. 573); *see also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (holding that disability "is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.").

16

Plaintiff cites a December 2021 record which indicates she had several migraines since her last appointment but had only recently begun taking Propranolol (Tr. 567–68). Plaintiff's provider increased the dose of Propranolol (Tr. 568). Plaintiff next cites to a March 2022 treatment record, which indicates she presented "to follow up on Migraines and hypertension." (Tr. 537). At this visit, her provider increased the dose of Propranolol and wrote: "Told patient if this does not work for her we will need to look at prescribing something else." (Tr. 541). Fast forward to the June 2022 records the ALJ cites in the written decision, and Plaintiff was still taking Propranolol and by that time, was "doing well overall." (*See* Tr. 608).

Plaintiff emphasizes NP Murphy, one of her treating providers, opined in July 2022 that Plaintiff would likely miss four days of work per month due to migraines (Tr. 620). However, Plaintiff does not address whether NP Murphy had treated Plaintiff since the last dose increase in March 2022, nor does she address NP Murphy's opinion that she had, at most, mild limitations in her ability to perform mental functions (Tr. 615).

Moreover, Plaintiff does not address the July 2022 records from her treating neurologist, which indicate Plaintiff reported no migraines and no headaches (Tr. 644 (cited by ALJ on Tr. 24)). Plaintiff also emphasizes that she testified to significant migraine-headache-related limitations and identified similar limitations in one of her function reports. However, the function report appears to be from 2021 (Tr. 259). As for her testimony, the ALJ considered it and found it was inconsistent with the medical evidence and other evidence in the record.

While the ALJ perhaps did not detail every treatment note in Plaintiff's medical record, he was not required to. *See Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) (explaining that ALJs are not required to discuss every data point in their decisions, "so long as they consider the evidence as a whole and reach a reasoned conclusion" (citing *Kornecky v.*

17

*Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006))); *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) (noting that an ALJ's failure to discuss certain records "does not indicate they were not considered"). And, contrary to Plaintiff's argument, the ALJ's failure to explicitly discuss every treatment note in the record does not mean he "completely ignored this line of evidence, stopping far too early in his analysis of Plaintiff's migraines." [Doc. 15 at Page ID # 711]. Rather, the record reflects the ALJ adequately addressed the longitudinal record regarding Plaintiff's migraines, and the written decision reflects a "logical bridge" between the evidence in the record and the ALJ's RFC assessment. *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted). The ALJ is only required to assess those limitations he finds credible. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." (citation omitted)); *see also Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) (finding no error where ALJ "excluded evidence of Justice's mental limitations because the ALJ Found that evidence was not credible."). The decision makes clear the ALJ considered the medical record (including the treatment records Plaintiff cites in her brief), Plaintiff's testimony, and Plaintiff's function report, even if he did not repeat it verbatim. *See Thacker,* 99 F. App'x at 665 (noting ALJ's failure to discuss certain records "does not indicate they were not considered").

### C. The ALJ's Decision is Supported by Substantial Evidence

The Court has endeavored to address Plaintiff's arguments. To the extent she makes arguments not explicitly addressed herein, the Court finds such arguments are either not adequately developed or are not persuasive for the reasons noted above. In sum, contrary to Plaintiff's

18

position, the record and the ALJ's decision indicate the ALJ properly evaluated Plaintiff's alleged symptoms, weighed the opinion evidence, and considered all the other evidence in the record to arrive at a well-reasoned RFC. The ALJ also properly relied on the testimony of the VE at step five. In short, the written decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam*, 2010 WL 2837260, at *3. Accordingly, the Court concludes the ALJ's decision is supported by substantial evidence and is not inconsistent with applicable law.

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001), this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 587 U.S. at 103). In assessing Plaintiff's RFC, the ALJ adequately explained the evidence that supported his conclusion and why he considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

V. **CONCLUSION**

Accordingly, it is **ORDERED** that:

    (1) Plaintiff's request for relief [Doc. 15; Doc. 20] is **DENIED**; and

    (2) the Commissioner's request that the final decision denying benefits be affirmed [Doc. 17] is **GRANTED**; and

    (3) this case is **CLOSED**.

SO ORDERED.

ENTER:

/s/ MIKE DUMITRU
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE